IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARK M. FISHER,                          )
        Petitioner,                      )
                                         )
        v.                               )     2:16-cv-309
                                         )
WENDY KELLY et al.,                      )
        Respondents.                     )


REPORT and RECOMMENDATION

I.   Recommendation:

It is respectfully recommended that the petition of Mark M. Fisher for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.


II.  Report:

Mark M. Fisher, an inmate in the custody of the Arkansas Department of Corrections, by his counsel has presented a petition for a writ of habeas corpus seeking to challenge his conviction and subsequent imposition of a life sentence following his conviction by jury of second degree murder, robbery, burglary, aggravated assault, unlawful restraint, false impersonation of a private employee, recklessly endangering another person and criminal conspiracy to commit robbery at No. CP-63-CR-2149-2007 in the Court of Common Pleas of Washington County, Pennsylvania. This sentence, imposed on December 3, 2008, is to be served consecutively to an Arkansas sentence which he is presently servicing.[1]

In his appeal to the Superior Court Fisher raised the following issues:

1.  Did the Commonwealth fail to present sufficient evidence to support the convictions for murder of the second degree, robbery, burglary, aggravated assault, unlawful restraint, false impersonation of private employee, recklessly endangering another person and conspiracy to commit robbery?

---

[1] Since the sentence Fisher is seeking to challenge commences at the termination of his Arkansas sentence, he satisfies the "in custody" requirement of 28 U.S.C. §2254. Meleng v. Cook, 490 U.S. 488 (1989).

2. Did the Trial Court err as a matter of law and/or abuse its discretion in failing to grant the Defendant a new trial where the Defendant's convictions for murder of the second degree, robbery, burglary, aggravated assault, unlawful restraint, false impersonation of private employee, recklessly endangering another person and conspiracy to commit robbery were against the weight of the evidence presented at trial which consisted solely of a partial latent fingerprint on an envelope found inside the Dale's residence and DNA evidence on a cigarette butt outside of the same residence six (6) days after the alleged incident?

3. Did the Trial Court err as a matter of law and/or abuse its discretion in overruling the objection of the Defendant, and in publishing a video of the crime scene to the jury which displayed the victim, who was bound, in a highly inflammatory manner, thereby causing the video's probative value to be exceeded by its undue prejudice to the Defendant?

4. Did the Trial Court err as a matter of law and/or abuse its discretion in, over the objection of the Defendant, allowing the admission of a photograph of Mr. Dale, taken 4-5 days after the date of the alleged crime, in that the depiction was not representative of the injuries sustained, inflammatory and unduly prejudicial to the Defendant's right to a fair trial?

5. Did the Trial Court err as a matter of law and/or abuse its discretion in granting the Commonwealth's motion in limine and in precluding evidence and testimony of the identification of Michael Marks by Shannon Dale as hearsay in that said statement did not constitute hearsay and, alternatively, fit within the exception of present sense impression?[2]

On June 7, 2010, the judgment of sentence was affirmed.[3] Allowance of appeal was denied by the Pennsylvania Supreme Court on February 9, 2011.[4]

On February 8, 2012, petitioner filed a counseled post-conviction petition.[5] Relief denied on November 25, 2013.[6] An appeal was filed in the Superior Court in which the issues presented were:

A. Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] when he failed to request a jury instruction informing the jury on the manner in which they should consider the presentation of DNA evidence?

B. Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] in failing to request a line-up involving [Appellant] and, thereby, deprived [Appellant] of a fair trial?

---

[2] See: Exhibit 54, the June 7, 2010 Memorandum of the Superior Court at p.5 (citing appellant's brief).
[3] Id.
[4] See: Exhibit 54.
[5] See: Exhibit 55.
[6] See: Exhibit 68.

C.  Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] in failing to preserve the testimony of Mr. Dale as to the identification of the actual perpetrator where the failure resulted in the exclusion of material evidence indicated that Mr. Dale had specifically identified Michael Marks rather that [Appellant] as a perpetrator?

D.  Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] when he failed to request a continuance of trial and obtain the services of an expert in the fields of DNA analysis and fingerprint identification?

E.  Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] in failing to object or file a motion in limine to preclude the hearsay testimony of Sergeant Kevin Kolson concerning Shannon Dale's account of the incident which did not fit within any exception to the hearsay rule?

F.  Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] in failing to object or in failing to file a motion in limine to preclude the hearsay statements of Mr. Dale brought in through Sergeant Kevin Kolson, the admission of which were in violation of the Confrontation Clause, Sixth Amendment of the United States Constitution and Article 1. § 9 of the Pennsylvania Constitution?

G.  Did the PCRA court err in failing to find that trial counsel rendered [ineffective assistance] by failing to argue that the out-of-court statement of Shannon Dale, concerning his identification of Michael Marks, was admissible pursuant to the Due Process exception to the hearsay rule?

H.  Did the PCRA court err in failing to find that [Appellant] was denied the effective assistance of counsel when trial counsel failed to object to misleading questions by the Assistance District Attorney when he asked [Appellant's] alibi witnesses about their failure to immediately notify law enforcement officers they were with [Appellant] on the date of the crime?

I.  Did the PCRA court err in failing to find that [Appellant] was denied effective assistance of counsel when trial counsel failed to object when the Assistance District Attorney cross-examined alibi witness, Karyl Fisher about her conviction for hindering the apprehension of a criminal in that the offense was not crimen false?[7]

On September 26, 2014, the denial of post-conviction relief was affirmed and on April 9, 2015 leave to appeal was denied by the Pennsylvania Supreme Court on April 9, 2015.[8]

---

[7] See: Exhibit 72 at pp.4-5 (citing appellant's brief).
[8] See: Exhibit 72.

In the instant counseled petition filed on July 7, 2015[9] Fisher contends he is entitled to relief on the grounds of ineffective assistance of counsel in that:

1. Trial Counsel rendered ineffective assistance of counsel when he failed to request a jury instruction informing the jury on the manner in which they should consider the presentation of DNA evidence.

2. Trial counsel rendered ineffective assistance of counsel in failing to preserve the testimony of Mr. Shannon Dale as to the identification of the actual perpetrator when the failure resulted in the exclusion of material evidence indicating that Mr. Dale had specifically identified Mr. Michael Marks, rather than Mr. Mark Fisher as the perpetrator.

3. Trial counsel rendered ineffective assistance of counsel in failing to object or file a motion in limine to preclude the hearsay testimony of Sgt. Kevin Kolson concerning Shannon Dale's account of the incident which did not fit within any exception to the hearsay rule.

4. Trial counsel rendered ineffective assistance of counsel in failing to object or in failing to file a motion in limine to preclude the hearsay statements of Mr. Dale admitted through Sgt. Kevin Koplson, the admission of which were in violation of the Confrontation Clause, Sixth Amendment of the United States Constitution, and Article 1 § 9 of the Pennsylvania Constitution.

5. Trial counsel rendered ineffective assistance of counsel by failing to argue that the out-of-court statement of Shannon Dale, concerning his identification of Michael Marks, was admissible pursuant to Due Process exception to the hearsay rule.[10]

The background to this prosecution is set forth in the September 26, 2014 Memorandum of the Superior Court:

Appellant's conviction stemmed from his participation in a criminal event that occurred on January 29. 2004. At approximately 1:00 p.m. on the day in question, Tomas Miller, a retired customer service representative for Equitable Gas Company, observed three males who appeared to be about twenty years old and who were wearing outdated Equitable Gas Company attire. They were walking up the driveway of the residence of Shannon and Freda Dale on 613 Venetia Road, Venetia, Washington, County. Mr. Dale was eighty-nine years old, and Mrs. Dale was ninety years old.

Mr. Dale was standing outside his home when he was approached by a Caucasion male who was wearing the vest of a utility worker and was between thirty to forty

[9] The instant petition was filed in the United States District Court for the Eastern District of Arkansas and transferred to this Court on March 16, 2016 since it challenges a conviction imposed in this district.
[10] See: Petition at p.3.

years old. Mr. Dale allowed the man into his home after the man said that he was employed by the gas company and needed to enter the house to perform work. When Mr. Dale entered his house, he saw three other men assaulting his wife. Mr. Dale and his wife were bound with duct tape. Mr. Dale then was struck repeatedly on the head and face, kicked in the torso, and his finger twisted so that he would respond to questioning about the location of his money. The four men proceeded to ransack the Dale home.

At approximately 3:00 p.m., Julia Heppner, a caregiver to the Dales, arrived at the residence. The garage door was open, and Mrs. Dale's purse was open on the kitchen table and the contents had been removed from that item. As Ms. Heppner looked into the hallway adjacent to the kitchen, she saw Mrs. Dale lying on the floor bound by duct tape. Ms. Heppner began to search for a telephone when she heard Mr. Dale cry for help. She found Mr. Dale badly beaten. The telephone had been pulled from the wall, so Ms. Heppner drove to a nearby store and telephoned police from that location.

Peters Township Police Sergeant Donald E. Heinlein and Peters Township Police Officer Brian Barbour responded to the call. At that time, there was a substantial amount of snow on the ground. When the police officers arrived, they discovered that Mrs. Dale was dead. The coroner testified that she died from a heart attack that was caused by the attack. Mr. Dale was bleeding from his face, had cuts and bruises on his face, and had bruising on his right rib area. Brian Shugar, the EMS supervisor who arrived at the scene shortly after the police, stated that Mr. Dale appeared severely beaten and that Mr. Dale told Mr. Shugar that he had been hit in the head as well as kicked in the chest. Mr. Dale was transported to the hospital where it was discovered that three teeth had been knocked from his upper denture plate, and he had sustained a significant injury to his right eye, a fractured rib, a twisted and swollen finger, and multiple prick-like injuries on his lower legs.

Sergeant Heinlein and Officer Barbour found that the Dale house, which was always very tidy, had been ransacked. All of the drawers were pulled from furniture located in the bedroom and dining room. The contents of the dining room drawers had been riffled through and thrown into a large pile on the floor. Appellant's thumbprint was discovered on an envelope in that pile of paper. The duct tape that had bound the decedent's ankles contained her DNA as well as DNA of a male. The male DNA could not be excluded as belonging to Appellant in that only one in 14,000 individuals in the Caucasian population would be expected to be included as a potential contributor to the mixture of DNA contained on the duct tape that bound Mrs. Dale. Six days after the crime, the snow had melted, and police discovered a cigarette butt just outside the Dale home. Police ascertained that neither the Dales nor did anyone who came to their house smoke[]. Therefore, police took the burnt butt, and it perfectly matched Appellant's DNA. Appellant was nineteen years old on the day of the incident.

Mr. Dale died on February 7, 2008. Prior to his death, he indicated that he could identify the perpetrator who approached him on January 29, 2003. Police showed him a photographic array on March 19. 2003, and he chose the picture of a man named Michael Marks as that man. Mr. Marks was initially charged in connection with this crime, but when no other evidence was found to link him to the incident, those charges were withdrawn. At trial, Appellant presented an alibi defense. His mother and sister-in-law testified that he was in Texarkana, Arkansas, on January 29. 2003.[11]

The issues which petitioner seeks to raise here all involve his claim of ineffective assistance of counsel.

At the post-conviction ("PC") hearing held on February 6, 2013, trial counsel Glen Alterio was called upon to testify (PC. pp.4-63). He testified that initially, petitioner related that he had not been in Pennsylvania at the time of the crime but that if he was in Pennsylvania he was not at the crime scene (PC. p.8); that there were no eyewitness who identified petitioner as being at the crime scene (PC. p.8); that petitioner's DNA was secured from the duct tape which was used to bind Mrs. Dale and on a cigarette butt found at the house (PC. pp.8,21); that at trial the prosecution's DNA expert could not conclude that petitioner was the perpetrator (PC. pp. 9-10); that DNA and fingerprint evidence was essential to the prosecution (PC. p.12); that he did not believe that a specific instruction on DNA and fingerprint evidence was essential to the case (PC. p. 13-14,55); that he believed that the general instruction on circumstantial evidence adequately covered DNA and fingerprint evidence (PC. pp.15,55); that based on his contemplation of an alibi defense he did not want to risk evidence being introduced from photos or a line-up (PC. p.20); that Mr. Dale had selected another individual from a photo array and provided the police with a description of his assailant (PC. pp. 15, 21-22); that he never requested a line-up and Mr. Dale died prior to trial (PC. pp.18-19); that at trial he introduced evidence that Mr. Dale had identified someone other than the petitioner as his assailant (PC. pp. 25-26); that at trial a police officer testified that Mr. Dale had selected another individual as his assailant and he wanted the jury to hear it although he considered it hearsay (PC.pp.29,31-34); that as a result of this identification, the police had originally charged another individual with the crime (PC. p.25); that he did not want Mr. Dale at the preliminary examination for fear he might identify petitioner as his assailant (PC. pp. 25-26, 27, 56, 58); that he called the petitioner's mother and sister to testify as alibi witnesses (PC. 37); that Carol Fisher was properly cross

[11]  See: Exhibit 72 pp 1-3.

examined on her credibility since she had been previously charged with hindering the apprehension of her husband (PC. pp. 41-42); that he had forwarded all the DNA lab reports to his expert who related that he could not contradict the Commonwealth's witness and concluded that the DNA evidence was inconclusive (PC. pp. 47-48); that he had unsuccessfully requested a continuance to secure a report from his expert but the petitioner had objected (PC. 51-52); that the DNA evidence neither included nor excluded the petitioner (PC. p.58) and that the only instruction he requested was regarding the alibi defense (PC.p.10).

Petitioner also testified that he was serving a 70 year Arkansas sentence (PC.pp.67-68)[12]; that he had requested that counsel seek a speedy trial and did not want a continuance to secure DNA and fingerprint reports (PC.pp.70,72-74); that he wanted to proceed to trial without the DNA expert (PC.p.78); that although he requested a line-up, counsel did not deem it advisable (PC.pp.72,76); that he had provided counsel with the names of the two alibi witnesses (PC.p.80) and that his witnesses did testify at trial (PC.p.80).

Against this background, we consider his claims of ineffective assistance of counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). In addition, federal courts

---

[12] As noted above, the sentence being challenged here is to be served consecutively to the Arkansas sentence.

are "doubly deferential" to state courts determinations of ineffective assistance of counsel claims.

Petitioner's first allegation is that counsel was ineffective for failing to request a jury instruction on DNA evidence. At the post-conviction hearing counsel specifically testified that he believe the general instruction of circumstantial evidence adequately covered the issue of DNA and fingerprint evidence and that the DNA evidence was at best equivocal. Counsel cannot be deemed to have been ineffective for electing to present his defense strategy of basing the defense on alibi which was the most credible defense available. Rolan v.Vaughn, supra. Thus this claim does not support an ineffectiveness claim.

Petitioner next challenges counsel effectiveness by failing to preserve the misidentification testimony of Mr. Dale. Clearly, this misidentification was before the jury, and counsel made the strategic decision not to risk another identification proceeding where petitioner might have been selected. Again, as a matter of sound strategy, this allegation does not provide a basis for relief. Rolan v. Vaughn, supra.

In his third and fourth claim, petitioner contends that counsel was ineffective for failing to seek to preclude the hearsay testimony of a police officer who related Mr. Dales' account of events. This again was sound strategy in that the officer related that the victim had identified his assailant as someone other than petitioner. Thus, this claim also does not provide a basis for relief. Rolan v. Vaughn, supra.

Finally, Fisher contends that counsel was ineffective for failing to argue that Mr. Dale's identification of another individual as his assailant, should have been admissible. With the exception of the name of the misidentified individual, the substance of Mr. Dale's misidentification was clearly before the jury and the exclusion of the misidentified individual's name was of no materiality. For this reason, this claim likewise does not provide a basis for relief.

Because the petitioner has failed to demonstrate that his conviction was obtained in any manner contrary to the determination of federal law by the Supreme Court, nor involved an unreasonable application of that law, he is not entitled to relief here. Accordingly, it is recommended that the petition of Mark M. Fisher for a writ of habeas

corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell
Filed: September 28, 2016                                United States Magistrate Judge